UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |
|---|---|
| TERRY STUCKEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:12-cv-386 |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) ) |

## REPORT AND RECOMMENDATION

The Plaintiff, Terry Stuckey ("Mr. Stuckey"), sued by counsel under § 205(g) of the

Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of the final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying his

applications for disability insurance benefits ("DIB") and supplemental security income ("SSI")

under Titles II and XVI of the Act. The parties' Motions for Summary Judgment were referred

for disposition to the undersigned U.S. Magistrate Judge pursuant to a September 27, 2012,

Order and in accordance with 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure

72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain

Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes

of this matter on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b)

and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** the

Commissioner's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, Mr. Stuckey's

Motion for Summary Judgment, ECF No. 9, be **DENIED**, the final decision of the Commissioner be **AFFIRMED**, and this matter be **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Mr. Stuckey applied for DBI and SSI, R.[1] 167-72, claiming as severe impairments a back injury, knee pain, high-blood pressure, and anxiety with a disability onset date of June 4, 2008, R. 63. He is eligible to receive Social Security Disability Benefits until September 30, 2014. R. 203. Mr. Stuckey's DIB and SSI applications were initially denied on December 1, 2010, R. 115-20, and again after reconsideration on July 25, 2011, R. 126-39. He requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration ("SSA"), R. 147-48, which was held on December 29, 2011, R. 32-60. Mr. Stuckey appeared by counsel and testified at the hearing. *Id.* The vocational expert ("VE") also appeared and testified. *Id.* The ALJ denied Mr. Stuckey's applications for DIB and SSI and issued a decision to this effect on January 18, 2012. R. 18-27.

Pursuant to the well-known five-step analysis, the ALJ found under the first step that Mr. Stuckey met the insured status requirements of the Act through September 30, 2014, R. 20, and had not engaged in substantial gainful activity since June 4, 2008, the alleged disability onset date, R. 20-21. Under the second step, the ALJ also found that Mr. Stuckey's back disorder constituted a severe impairment. R. 21. However, under the third step, the ALJ determined that Mr. Stuckey did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. R. 22. Under the fourth step, the ALJ also determined that Mr. Stuckey had the residual functional capacity ("RFC") to perform light work

---

[1] "R." refers to the certified administrative record that was filed under seal on September 24, 2012, pursuant to Local Civil Rules 5(B) and 7(C)(1).

consisting of only occasional postural activity, R. 22-26, and that he was capable of performing past relevant work as a utility foreman, R. 26. Therefore, the ALJ concluded that Mr. Stuckey had not been disabled as defined in the Act since his alleged disability onset date. *Id.*

Mr. Stuckey's appeal to the Appeals Council was initially denied on April 27, 2012, R. 7-12, and again on May 21, 2012, after consideration of additional medical evidence, R. 1-6. This action ensued.

Mr. Stuckey, by counsel, filed a Complaint on July 18, 2012, ECF No. 1, and the U.S. Attorney, on behalf of the Commissioner, answered on September 21, 2012, ECF No. 5. Mr. Stuckey filed a Motion for Summary Judgment along with a brief in support on October 26, 2012, ECF Nos. 9-10, and the Commissioner did the same on November 27, 2012, ECF Nos. 11-12. Mr. Stuckey has not replied, and the time to do so has lapsed. Therefore, the Motions are ripe for disposition.

## II. STANDARD OF REVIEW

Judicial review of a final decision regarding disability benefits under the Act, 42 U.S.C. § 301 *et seq.*, is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *See id.* § 405(g) ("The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive"); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase, "supported by substantial evidence," means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Fourth Circuit has defined "supported by substantial evidence" as "evidence which a reasoning mind would accept as

3

sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1996). Thus, it is not within the province of the Court to determine the weight of the evidence, nor is it the Court's function to substitute its judgment for that of the Commissioner's if her decision is supported by substantial evidence. *See id.*; *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir. 1962). Ultimately, it is the duty of the ALJ reviewing a case, not the responsibility of the Court, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence and that it is the claimant who bears the risk of nonpersuasion."); *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").

### III. ASSIGNMENTS OF ERROR

#### A. Issues Relating to the Vocational Expert

After reviewing Mr. Stuckey's file and listening to his testimony, the VE testified at the hearing that Mr. Stuckey's work in the preceding fifteen years as a utility foreman, although generally characterized as skilled and light,[2] appeared to be medium when actually performed.[3]

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).
[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* §§ 404.1567(c), 416.967(c). Additionally, "[i]f someone can do medium work,

R. 54. The ALJ then inquired of the VE as to a person of Mr. Stuckey's age, education, work background and who is capable of light work, provided that work would not require more than occasional postural activity, and whether that profile supported the work of a utility foreman as it is normally performed. *Id.* The VE answered affirmatively. *Id.* In his decision, the ALJ concurred with the VE, finding that in the vocationally relevant past, Mr. Stuckey worked as a utility foreman in road construction, a job described in the Dictionary of Occupational Titles ("DOT") as light skilled work, but performed by him at the medium exertional level, per the VE. R. 26. After comparing Mr. Stuckey's RFC with the physical and mental demands of his work, including installing underground equipment (new water lines, sewer lines, and storm drains), pipefitting, operating equipment and hand tools, and supervising other workers, the ALJ found that he is capable of performing work he performed in the vocationally relevant past. *Id.* However, Mr. Stuckey maintains that the VE mischaracterized his past relevant work, resulting in her testimony conflicting with the DOT. ECF No. 10 at 7.

"[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995) (citing *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990) ("The two tests are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate.")) (emphasis in original and other citation omitted). Although Mr. Stuckey claims his relevant work was heavy to very heavy as it was performed in the past, ECF No. 10 at 8, this is immaterial as the VE and ALJ did not, and need not, find that he was able to perform his relevant work as he specifically performed in the past. Rather, they determined that

[then] he ... can also do ... light work." *Id.* §§ 404.1567(c), 416.967(c).

Mr. Stuckey "is able to perform [the work of a utility foreman] *as generally performed*," even if that work was "performed by [him] at the medium exertional level, per the" VE.[4]   R. 26 (emphasis added); *see* R. 54 ("The utility foreman, based on the [DOT,] is characterized as skilled and light, but it appears to be medium based on claimant's testimony.").  As the fourth step of the disability inquiry is written in the disjunctive, the ALJ may properly find, as he did here, that Mr. Stuckey is not disabled because he is able to perform the work of a utility foreman as it is generally performed in the economy, even if he is not able to perform it as he did in the past.  The more appropriate inquiry is whether the VE and ALJ erred in characterizing Mr. Stuckey as a utility foreman in road construction. R. 26.

Mr. Stuckey complains that the VE, during her testimony, failed to assign "a DOT code number for the utility foreman job she depicted as being light," ECF No. 10 at 8, thereby creating some ambiguity as to his occupation.  For example, according to Mr. Stuckey, when the VE identified him as a utility foreman, she could have, in fact, meant a utility worker in any industry, which is an exertionally heavy occupation, or a highway maintenance worker, which is an exertionally medium occupation.  *Id.*  All of the DOT code numbers mentioned in Mr. Stuckey's brief correspond to occupations that require greater-than-light exertional capacity.  Despite Mr. Stuckey's attempt to create an ambiguity as to the nature of his past relevant work and the appropriate occupational title, the record upon which the ALJ relied clearly established Mr. Stuckey's occupation as that of a utility foreman.

---

[4] The analysis would not change if the VE and ALJ accepted Mr. Stuckey's assertion that the work of a utility foreman as he performed it in the past was heavy to very heavy because the work of a utility foreman as generally performed in the economy is consistently characterized as light and skilled.

Although the VE did not proffer a DOT code number for the utility foreman position that she characterized as skilled and light, the ALJ, nonetheless, inquired as to whether her testimony was consistent with the DOT. R. 57. The VE responded in the affirmative. *Id.* Generally, VEs "who testify during social security disability hearings ... provide a DOT number," *Richardson v. Astrue*, No. EDCV 07-1524 AJW, 2008 WL 4531832, at *5 (C.D. Cal. Oct. 6, 2008), but the VE's failure to do so here does not render the ALJ's decision unsupported by substantial evidence.

In his decision, the ALJ specifically identified Mr. Stuckey as a utility foreman in road construction, and he adopted the VE's testimony, which arrived at a similar conclusion. R. 26 ("In the vocationally relevant past, the claimant worked as a utility foreman in road construction, a job described in the [DOT] as light skilled work, but performed by the claimant at the medium exertional level, per the vocational expert."), 54 ("The utility foreman, based on the [DOT,] is characterized as skilled and light, but it appears to be medium based on claimant's testimony."). This is sufficient. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). To the extent any ambiguity remains—whether by the term, "utility foreman," the VE meant a utility or highway-maintenance worker, not a utilities-and-maintenance supervisor or a similar occupation—the record is replete with instances where, even if Mr. Stuckey's occupation is inconsistently set out, he is consistently identified as a supervisor or foreman:   (1) his counsel identified him at the hearing as a utility foreman on road construction projects, R. 35, and in an April 20, 2012, letter to the Appeals Council as a utility foreman, R. 265; (2) he identified himself at the hearing as a foreman on utility construction

7

projects, R. 38; (3) a September 23, 2010, work activity and disability report indicated that he worked as a utility foreman in road construction from 1986 to 2010, R. 194-95, 208; (4) an October 25, 2010, work history report designated him as a foreman in utility construction from 1988 to 2008, and of the six positions listed in this report, all but one of them involved supervision of others, R. 215-22; (5) a January 10, 2011, function report indicated that he worked in a leadership capacity and was employed as a construction foreman, R. 247; (6) a November 8, 2011, work background report identified his occupational duties from 1993 to 2010 as that belonging to a foreman, R. 258; (7) in patient visits on March 9, 2010, and September 27 and December 30, 2011, Dr. David Scott Ramstad ("Dr. Ramstad") wrote that Mr. Stuckey was a construction foreman, R. 299, 333, 339; and (8) in a March 25, 2009, visit, Dr. Ramstad identified Mr. Stuckey's occupational history as that of a utility worker supervisor, R. 310. Importantly, Mr. Stuckey described in his documentation to the agency his most recent job as supervisor of the installation of underground utilities, which is consistent with light work. R. 216. Inasmuch as Mr. Stuckey failed to point to some other occupation that is equivalent to the work of a utilities or road construction *foreman* or *supervisor* and that is not classified as light work, substantial evidence supports the ALJ's decision.

Moreover, to the extent the VE's DOT designation is ambiguous, "the circumstances surrounding [Mr. Stuckey's] failure to object at the hearing suggest that this [ambiguity] is better explained by hindsight interpretation than by actual error." *Edwards v. Sec'y of Health & Human Servs.*, No. 94-1345, 34 F.3d 1065, 1994 WL 481140, *3 (1st Cir. Sept. 2, 1994) (*per curiam* table decision). At the hearing, Mr. Stuckey was represented by counsel, who declined to further question the VE. R. 57. Counsel even "evinced no surprise *or confusion* at the VE's

testimony." *Edwards*, 34 F.3d 1065, 1994 WL 481140, at *3 (emphasis added).   Had she taken the opportunity to cross-examine the VE, counsel could have requested that the VE cite to specific DOT code numbers or could have clarified the VE's testimony and dispel any alleged confusion.   Given this, there is no good cause for why Mr. Stuckey, through counsel, did not raise the above issue before the ALJ at the hearing.

## B. Issues Relating to the Treating Physician's Opinion

Mr. Stuckey's lastly argues that the ALJ improperly assigned Dr. Ramstad's, the treating physician, medical opinion minimal evidentiary weight. ECF No. 10 at 11; R. 25.

Pursuant to 20 C.F.R. § 404.1527(c), unless a treating physician's medical opinion is afforded controlling weight, the ALJ must consider the following non-exhaustive factors: (1) whether the physician has examined the claimant; (2) whether the physician has treated the claimant, and the nature, extent, and length of the treatment relationship; (3) whether the medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings; (4) whether the opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist in the field of which he is opining; and (6) other factors. 20 C.F.R. § 404.1527(c)(1)-(6).[5]   Although "[c]ourts often accord greater weight to the testimony of a treating physician," *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (internal quotation marks and citation omitted), the ALJ is not required to do so "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence," *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see* 20 C.F.R. § 404.1527(d)(2).   Because the ALJ did not assign Dr. Ramstad's medical opinion controlling weight and, in fact, gave it only minimal evidentiary

---

[5] The same factors and considerations in evaluating medical opinion evidence apply equally to a claimant's DBI (20 C.F.R. § 404.1527(c)(1)-(6)) and SSI claims (20 C.F.R. § 416.927(c)(1)-(6)).

weight, he was required to explain his reasoning by addressing the preceding factors. And the undersigned finds the ALJ did so sufficiently.

To the extent the ALJ failed to expressly address all of the preceding factors, this failure alone does not justify a finding that the ALJ's decision is not supported by substantial evidence in the record. *See Lusardi v. Astrue*, 350 F. App'x 169, 172 (9th Cir. 2009) ("The ALJ did not expressly address all of the factors listed in 20 C.F.R. § 404.1527([c])(1)-(6) in determining the weight to be given to [the treating physician's] opinion[,].... [I]n his decision, the ALJ specifically stated that he considered the § 404.1527([c]) factors.") (unpublished). Here, the ALJ explained that he "considered opinion evidence in accordance with the requirements of[, *inter alia*,] 20 CFR 404.1527 and 416.927." R. 22. Therefore, the ALJ recognized the need to consider and expressly address the above factors.

First, the ALJ identified Dr. Ramstad, a specialist in internal medicine, R. 332, as a treating source and acknowledged that he examined Mr. Stuckey on March 9 and September 21, 2010 as well as March 23 and September 27, 2011. R. 23-24. Second, the ALJ indicated that Dr. Ramstad treated Mr. Stuckey on three separate occasions: March 9 (prescribed medication) and September 21 (prescribed medication), 2010, and March 23, 2011 (recommended he see a psychiatrist or pain management specialist and undergo an MRI). *Id.* Third, and most notably, the ALJ found Dr. Ramstad's opinion was not supported by the evidence. R. 25.

Specifically, during his visits with Dr. Ramstad in 2010 and 2011, Mr. Stuckey generally presented with low back pain, muscle aches, joint stiffness and pain, numbness and pain extending down his right leg, difficulty walking, and difficulty standing more than five minutes. R. 300, 303, 307, 333. Yet, despite finding Mr. Stuckey's back and musculoskeletal and

neurological systems, including gait and stance, were normal,[6] Dr. Ramstad assessed him with low back pain and as unable to work. It appears this assessment was based on Mr. Stuckey's subjective reports of his pain.[7] R. 301, 304-05, 308-09, 334. The ALJ, however, found that Dr. Ramstad "identifie[d] no evidence of limited range of motion of the spine or extremities, no sensory impairment, motor weakness, reflex disturbance, gait disturbance, edema, muscle spasms, or other musculoskeletal abnormality." R. 25.

Although Dr. Ramstad recommended that Mr. Stuckey visit a psychiatrist or pain management specialist and undergo an MRI of his lower back, R. 309, he failed to heed these recommendations, R. 24. This is consistent with the ALJ's finding that despite reportedly undergoing lumbar injections and physical therapy before a 2006 spinal fusion, Mr. Stuckey "has not participated in therapy or other pain management modalities since the alleged onset date." R. 25. And despite being prescribed pain medication on March 23, 2011, it had run out by the time Mr. Stuckey visited Dr. Ramstad six months later on September 27, 2011. R. 333. This as well as Dr. Ramstad's note that Mr. Stuckey used pain medication only occasionally, R. 329, support the ALJ's finding that "the claimant does not require prescription pain medications on a daily basis, as he runs out of medication for several weeks to several months at a time and does not seek emergency treatment or follow up with his physician in a timely manner to get refills," R. 25. Additionally, as the ALJ noted, Mr. Stuckey "does not use a TENS unit or require an assistive device for ambulation or balance," and has not required "treatment other than medication for relief of symptoms." *Id.* "[T]here are [also] no indications for additional

---

[6] On one occasion, Dr. Ramstad also found the surgical scar on Mr. Stuckey's lower back was not tender. R. 305.
[7] On another occasion, Dr. Ramstad observed Mr. Stuckey walking uncomfortably, slowly, and carefully. R. 309. He also appeared to be in pain while standing up from a sitting position. *Id.* Despite these observations, Dr. Ramstad found Mr. Stuckey's gait and stance to be normal. *Id.*

11

surgery." *Id.*

Notwithstanding the above, Dr. Ramstad diagnosed Mr. Stuckey with right knee and lower back pain as well as sciatica based, it appears, on Mr. Stuckey's subjective reports of pain and some "past" laboratory and diagnostic test results. R. 327. But Dr. Ramstad fails to identify these "past" test results, *id.*, and as the ALJ indicated, despite undergoing a spinal fusion in 2006, Mr. Stuckey has not had recent diagnostic testing to assess the presence of recurrent disc herniation, disc bulging, fracture, or nerve root involvement, R. 25.

In light of this evidence, Dr. Ramstad's medical opinion is supported only by Mr. Stuckey's reports of pain, symptoms, and limitations, which are purely subjective, and not by objective evidence such as medical signs and laboratory findings. *See Craig*, 76 F.3d at 591-92 ("[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant."). According to the ALJ, Dr. Ramstad's opinion of Mr. Stuckey's limitations, which appear to him to be extreme, "would be expected of an individual with signs of recurrent disc herniation, nerve root involvement, and an aggressive, but failed treatment history—the claimant has none of this history."[8] R. 25. Having assigned minimal evidentiary weight to Dr. Ramstad's opinion, the ALJ also assigned great evidentiary weight to the opinion of the State agency medical consultant, who found that "despite [Mr. Stuckey's] symptoms of chronic lower back pain, he could perform light work involving occasional climbing of ladders, ropes and scaffolds, stooping, and crouching and frequent

---

[8] After the ALJ issued his decision, Mr. Stuckey proffered to the Appeals Council additional medical evidence from Dr. Ramstad, specifically, his notes concerning Mr. Stuckey's visit on December 30, 2011. R. 338-43. This additional evidence, which made no reference to any complaints of back pain, does not support the limitations Dr. Ramstad assessed for Mr. Stuckey. *Id.*

climbing of ramps and stairs, kneeling, crawling, and balancing." R. 23.

Accordingly, the undersigned finds that the ALJ provided sufficient explanation and was within his discretion in assigning Dr. Ramstad's medical opinion minimal evidentiary weight.

## IV. RECOMMENDATION

For these reasons, the undersigned **FINDS** that the Commissioner's decision is supported by substantial evidence and complies with the applicable law.  Therefore, the undersigned **RECOMMENDS** the Commissioner's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, Mr. Stuckey's Motion for Summary Judgment, ECF No. 9, be **DENIED**, the final decision of the Commissioner be **AFFIRMED**, and this matter be **DISMISSED WITH PREJUDICE**.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S.

13

140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to amend the Defendant's name in the caption of the case to read, "Carolyn W. Colvin, Acting Commissioner, Social Security Administration," and is further **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for the parties.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 21, 2013

14

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Robert Wayne Gillikin II, Esq.
Rutter Mills LLP
160 West Brambleton Avenue
Norfolk, Virginia 23510
Counsel for the Plaintiff

Mr. Joel Eric Wilson, Esq.
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

_____
Fernando Galindo
Clerk of the Court

By: _____
Deputy Clerk
August 23, 2013
